FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 22, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JESSICA W.,<br><br>    Plaintiff,<br><br>  v.<br><br>FRANK BISIGNANO,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>    Defendant. | No: 2:25-cv-00435-RLP<br><br><br>ORDER AFFIRMING THE<br>COMMISSIONER'S DECISION |

BEFORE THE COURT is an appeal from an Administrative Law Judge (ALJ) final decision denying disability income benefits under Title II of the Social Security Act. ECF No. 12. The Court considered the matter without oral argument. For the reasons discussed below, the Court concludes the ALJ's decision is supported by substantial evidence. Therefore, Ms. W.'s brief, ECF No. 12, is denied and the Commissioner's brief, ECF No. 15, is granted.

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 1

JURISDICTION

Ms. W. filed for disability insurance benefits (DIB) on April 1, 2023, alleging an onset date of March 12, 2021. Tr. 203-06. Benefits were denied initially, Tr. 96-105, and upon reconsideration, Tr. 107-14. Plaintiff appeared at a hearing before an ALJ on December 31, 2024. Tr. 39-65. On August 7, 2025, the ALJ issued an unfavorable decision, Tr. 14-37, and the Appeals Council denied review on August 26, 2025. Tr. 1-6. The matter is now before this Court pursuant to 42 U.S.C. § 405(g).

BACKGROUND

The facts of the case are set forth in the administrative hearings and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore require only brief summary.

Ms. W. was born in 1984 and was 36 years old on the alleged onset date. Tr. 30. She has a high school diploma. Tr. 46. She has work experience as an orchard accounting clerk. Tr. 30, 46. Ms. W.'s claim for disability insurance benefits alleges disability based on anxiety, OCD, COVID-19 long-haul problems, fibromyalgia, Hashimoto's, type one diabetes, and neuropsychological symptoms. Tr. 244. Ms. W. testified that extreme anxiety and depression are the main impairments preventing her from working. Tr. 49. She has difficulty stepping out of the house and seeing people and spends a lot of time sleeping. Tr. 49. Physically, she experiences severe pain and aches throughout her body. Tr. 51. She has fibromyalgia which was

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 2

intensified by COVID-19. Tr. 51. She experiences dizziness, loss of balance, brain fog, cognitive dysfunction, and difficulty maintaining insulin levels with a pump. Tr. 53-56.

STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 3

decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must meet two criteria to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner considers the severity of the claimant's impairment.

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 4

20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must assess the claimant's residual functional capacity (RFC). At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). At step five, the Commissioner considers whether, in view of the claimant's RFC, age, education, and past work experience, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 5

in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

ALJ'S FINDINGS

At step one, the ALJ found Ms. W. has not engaged in substantial gainful activity since March 12, 2021, the alleged onset date. Tr. 20. At step two, the ALJ found that Ms. W. has the following severe impairments: fibromyalgia, obesity, diabetes, depressive disorder, obsessive compulsive disorder, and anxiety disorders. Tr. 20.

At step three, the ALJ found Ms. W. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 20. With respect to the RFC, the ALJ found Ms. W. has the capacity to perform light work with the following additional limitations:

> frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching and crawling; occasional exposure to extreme vibration; no exposure to hazards such as unprotected heights and dangerous machinery; working in approximately two-hour intervals with standard work breaks provided; occasional, superficial interaction with the public; working in proximity to co-workers but no collaborative tasks; able to accept instructions from a supervisor; and occasional, routine workplace changes.

Tr. 22.

At step four, the ALJ found Ms. W. is able to perform past relevant work as an accounting clerk. Tr. 30. Alternatively, at step five, after considering Ms. W.'s RFC, age, education, work experience, and the testimony of a vocational expert, the

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 6

ALJ found there are other jobs that exist in significant numbers in the national economy that Ms. W. can perform such as administrative clerk, file clerk, and general clerk. Tr. 31.

Thus, the ALJ found Ms. W. has not been under a disability, as defined in the Social Security Act, from March 12, 2021, through the date of the decision. Tr. 31.

ANALYSIS

Ms. W. alleges the ALJ made several errors in concluding she is not disabled. Specifically, she contends the ALJ erred by (1) failing to properly consider her allegations about the impact of her symptoms on her ability to work; (2) improperly evaluating the persuasiveness of the medical opinion evidence; and (3) applying the wrong legal standard and improperly disregarding lay witness statements. Ms. W. argues the wrongly discounted evidence supports greater limitations than included in the RFC and ultimately impacts the ALJ's conclusion that she was not disabled. She contends the proper remedy is to remand this matter for further proceedings.

The Court concludes the ALJ did not err in evaluating Ms. W.'s symptom testimony or the medical opinion evidence, and that the ALJ's consideration of the lay witness statements is legally sufficient. Each of Ms. W.'s claims of error are addressed in turn.

1. Symptom Testimony

A two-step process applies to an ALJ's assessment of a claimant's testimony regarding subjective pain and symptoms. "First, the ALJ must determine whether

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 7

there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). Second, if there is such evidence and there is no sign of malingering, the claimant's testimony should generally be accepted unless there is clear and convincing evidence in support of rejection. *See Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014). "[T] he ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

The ALJ found Ms. W.'s medically determinable impairments could reasonably be expected to cause only some of the symptoms alleged and that her statements about the intensity, persistence, and limiting effects of even those symptoms that are supported are not entirely consistent with the medical evidence and other evidence in the record. Tr. 23. The ALJ found: (1) fibromyalgia and diabetes are controlled or improved with treatment; (2) Ms. W.'s testimony is not consistent with her symptom reports in the treatment record; (3) the record indicates Ms. W. consistently presented with unremarkable findings which is inconsistent with the alleged severity of symptoms and functional limitation; (4) her presentation at a

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 8

consultative exam suggests exaggeration of symptoms; (5) Ms. W.'s allegations regarding mental symptoms are inconsistent with each other; (6) the mental health record suggests a good response to treatment; (7) Ms. W.'s activities are not entirely consistent with her allegations, including driving and travel to other states.  Tr. 24-25.

Ms. W.'s complaints about the decision are focused primarily on the ALJ's consideration of her fibromyalgia and mental health symptoms. Pursuant to Social Security Ruling 12-2p, in evaluating the RFC of a claimant with fibromyalgia, the ALJ must consider "all relevant evidence in the case record" and the longitudinal record whenever possible because the symptoms of fibromyalgia can wax and wane so that a person may have "bad days and good days." Social Security Ruling 12-2p, 2012 WL 3104869 (effective July 25, 2012).

*Improvement with Treatment*

Ms. W. does not challenge the ALJ's determination that her diabetes is controlled with treatment. She contends the record does not reflect her fibromyalgia is similarly controlled. Ms. W. notes the ALJ cited a single record from January 2024 indicating she "feels that her fibromyalgia regiment is working well." Tr. 24 (citing Tr. 842). Ms. W. cites other records from January and November 2021 indicating that since coming down with COVID-19, she was struggling with symptoms such as fatigue, myalgias, diffuse body aches and pain and anxiety. However, in February 2022, she reported feeling a lot better with medication, noting

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 9

less pain and improved brain fog. Tr. 653. In January 2023, there was "[s]atisfactory control of symptoms on current regimen." Tr. 648. These records cited by Ms. W. appear to support the ALJ's finding that treatment was effective at that point.

By May 2023, Ms. W. experienced an exacerbation of fibromyalgia and her medication was changed to gabapentin. Tr. 734. There appear to be no records or comments regarding fibromyalgia from May 2023 to January 2024. In January 2024, Ms. W. reported her medication was working well. Tr. 842. A few months later, in April 2024, she was struggling with myalgias, gabapentin was providing minimal relief, and she was not taking care of her diabetes very well. Tr. 1751. Her medication was adjusted. Tr. 1753. In May 2024, she had a new symptom of paresthesias and skin allodynia; Ms. W. was worried about multiple sclerosis, so an MRI and labs were ordered. Tr. 1721-22. In July 2024, during a follow up appointment, Ms. W. reported Lyrica helped more than gabapentin and her skin allodynia had subsided, but she had brain fog and was sometimes woozy. Tr. 1603. In November 2024, she was noted to be intolerant of gabapentin, Lyrica, and amitriptyline and felt more mentally clear without the medications, yet she struggled with a lot of pain from fibromyalgia. Tr. 1486. Nonmedicinal interventions were recommended such as stretching, yoga, and warm baths. A new medication was prescribed. Tr. 1486.

Ms. W. contends these records demonstrate her fibromyalgia symptoms were not controlled by medication, but that her medications were adjusted over time as

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 10

her symptoms waxed and waned. That interpretation of the record may be a reasonable one; but it does not follow that the ALJ's interpretation of the record is incorrect. Where the evidence conflicts, it is the ALJ's duty to resolve the ambiguity. *See Morgan v. Commissioner*, 169 F.3d 595, 599-600 (9th Cir. 1999). We will not reverse credibility determinations of an ALJ based on contradictory or ambiguous evidence. *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (citing *Allen v. Heckler,* 749 F.2d 577, 579 (9th Cir.1984)). However, even if this was error, it would be harmless error. An error is harmless if it is "inconsequential to the ultimate nondisability determination." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (citation omitted). Because the ALJ provided other clear and convincing reasons supported by substantial evidence, such as inconsistency with the medical record and inconsistency with Ms. W.'s travel activities which are discussed below, the outcome would not be changed despite any error. *See Carmickle v. Comm'r of Soc. Sec. Admin*, 533 F.3d 1155, 1162 (9th Cir. 2008.

*Clinical Presentation*

The ALJ found Ms. W.'s clinical presentation was consistently unremarkable, which is inconsistent with alleged level of symptom severity and functional limitations. The ALJ noted one report of transient lower extremity swelling, Tr. 1037-38, but otherwise largely normal findings of no acute distress, no abnormalities in gait, ambulation, balance, sensation, reflexes, motor function, or muscle strength. Tr. 24 (citing e.g., Tr. 843, 1037-38, 1068, 1125-26, 1178-80, 1411, 1460, 1486,

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 11

1497-98, 1558, 1663, 1668, 1876, 1935-36). The ALJ observed that despite Ms. W.'s allegations of dizziness and poor balance, there is no indication that any provider recommended an assistive device.

Ms. W. contends the ALJ erred by finding her clinical presentation was inconsistent with her allegations regarding fibromyalgia. She argues that some of the citations given by the ALJ involved appointments that were not for fibromyalgia. ECF No. 12 at 8 (citing Tr. 1037-38, 1068, 1179-80, 1411, 1460, 1497-98). This argument is unpersuasive. While some of the records do not specifically involve treatment of fibromyalgia, these are not like the records at issue in *Diedrich v. Berryhill*, 874 F.3d 634 (9th Cir. 2017), cited by Ms. W. In that case, the ALJ noted an absence of mental health symptoms in the treatment record of an orthopedist. Here, the ALJ cited records involving evaluations by Ms. W.'s treating practitioners for follow up her various physical conditions. The fact that not every appointment involved specific assessment of fibromyalgia lends weight to the ALJ's point rather than undermines it. Furthermore, the ALJ is tasked with evaluating the longitudinal record, so an observation of normal or minimal findings over the course of the record is an appropriate consideration.

Plaintiff also points out that other records cited by the ALJ indicated she had heightened sensitivity to pain and positive tender points, which are objective signs of fibromyalgia documented by her providers. ECF No. 12 at 8 (citing Tr. 734, 1486, 1721). Yet the ALJ did not dismiss Ms. W.'s fibromyalgia, as the ALJ found

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 12

fibromyalgia is a severe impairment, Tr. 20, considered records indicating symptoms from fibromyalgia, Tr. 23, and assessed physical restrictions in the RFC due in part to fibromyalgia. Tr. 22. In evaluating Ms. W.'s symptoms statements, however, the ALJ's observations about her presentation in the medical record are relevant and supported by substantial evidence.

*Inconsistent Symptom Reports*

Ms. W. does not challenge the ALJ's finding that certain symptom reports in the treatment record are not consistent with her testimony. Tr. 25. The ALJ observed Ms. W. testified she cannot work because of leg pain, difficulty standing, she constantly feels like she is about to pass out; she has to hold onto something because of poor balance, and she has to have her husband or daughter nearby to help prevent falls. Tr. 24, 52-54. The ALJ noted, however, that the record reflects few mentions of leg pain, poor balance, or feeling faint, *see* Tr. 963-1783, 1855-1938, and that while dizziness was mentioned a few times, Tr. 1493, 1612, 1729, she also denied dizziness on several occasions, e.g., Tr. 810, 1552, and most records do not indicate complaints of dizziness. This is a clear and convincing reason supported by substantial evidence.

*Exaggeration*

The ALJ found Ms. W.'s presentation during a September 2023 consultative examination for disability benefits was markedly different than her presentation in the treatment record, which the ALJ concluded suggests she was exaggerating her

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 13

symptoms at the examination. Tr. 24. For example, during the exam, Ms. W. complained of being extremely weak in her upper and lower body, her large joints hurt at all times, she had a hard time maintaining balance, she ran out breath easily and needed to take frequent breaks due to fatigue. Tr. 793. The examiner, Oscar Del Valle, ARNP, found severe deficits in balance, walking, range of motion, and breathing. Tr. 797-98. The ALJ noted these findings contrast with the treatment record reflecting few complaints of poor balance or dizziness; no complaints of significant, ongoing respiratory or breathing issues; and few complaints of joint stiffness. Tr. 24-25. The ALJ observed the treatment record generally reflected benign presentation with no acute distress, no abnormalities in gait, ambulation, balance, sensation, reflexes, breathing, range of motion, motor function, or muscle strength. Tr. 25 (citing Tr. 843, 1037-38, 1068, 1125-26, 1178-80, 1411, 1460, 1486, 1497-98, 1558, 1663, 1668, 1876, 1935-36). Ms. W. does not challenge this finding except as it relates to consideration of Mr. De Valle's opinion, discussed below. This is a clear and convincing reason supported by substantial evidence.

*Mental Health Testimony*

The ALJ found Ms. W.'s testimony regarding her mental symptoms is inconsistent with her other symptom statements. The ALJ noted the Function Report completed by Ms. W. in April 2024 alleges significant problems with remembering, understanding, concentrating, getting along with others, and following spoken and written instructions. Tr. 25 (citing 305-13; *see* Tr. 311). According to the ALJ, at the

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 14

December 2024 hearing, Ms. W. only briefly mentioned mental impairments yet testified at length about her physical impairments. Tr. 25. However, as Ms. W. observes, at the hearing Ms. W. testified she has "memory issues" (Tr. 48), she has "extreme anxiety" that is "debilitating" and she "can't even fathom stepping out of my house and seeing people" (Tr. 49). She testified that she could not go back to work in accounting because "I can't even make sense of a simple question and concentration. I can't – yea, the brain fog and the [cognitive] dysfunction." Tr. 54. The Court agrees with Ms. W. that her testimony at minimum touched on functioning related to the allegations in her Function Report, even if each allegation was not directly addressed. The ALJ's finding is not supported by substantial evidence. However, the error is harmless because the ALJ gave other clear and convincing reasons supported by substantial evidence, including that the record demonstrates a good response to mental health treatment and Ms. W.'s allegations are inconsistent with the observations and complaints in the treatment record. *See Carmickle*, 533 F.3d at 1162-63.

*Mental Health Treatment*

The ALJ found the mental health record suggests a good response to treatment. The ALJ noted Plaintiff improved with treatment in March 2021 (Tr. 1336), there was ongoing improvement and stability later in 2021 (Tr. 1299, 1288, 1277, 1208), by January 2022, Ms. W. reported doing well with no significant symptoms (Tr. 1197), in June 2022, everything was going really well and her

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 15

psychiatric symptoms were well managed (Tr. 1150), and mental health treatment records through 2024 indicating stability of Ms. W.'s mental symptoms Tr. 972-73, 979, 986, 1003, 1062, 1085, 1091, 1138, 1144, 1155, 1161, 1167, 1789, 1803, 1824. In further support, the ALJ acknowledged there were some findings of anxious (or constricted) affect in the record but noted that mental status exams had largely unremarkable findings regarding affect, behavior, memory, concentration, speech, and other aspects of mental functioning.  Tr. 1085, 1155, 1161, 1197, 1277, 1288, 1299, 1460, 1486, 1497, 1558.

Plaintiff argues generally these records do not support the ALJ's finding and calls the ALJ's citations selective; however, she does not cite any records showing the ALJ's finding is incorrect or overstated. The ALJ cited findings over the longitudinal record supporting the reasonable conclusion that Ms. W.'s mental health stabilized with treatment. This is a clear and convincing reason supported by substantial evidence.

*Activities*

The ALJ found Ms. W.'s activities are not entirely consistent with her allegations, including driving and travel to other states. The ALJ observed that an April 2024 function report completed by Ms. W. indicates she cannot drive, Tr. 309, but other records show she drives on a regular basis, *e.g.* Tr. 436, 631, 788, and she testified that she drives her daughter to school, Tr. 49. Ms. W. contends that at the time of the function report, she was unable to drive due to problems with her vision,

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 16

which later improved with treatment. Tr. 847-499 (January 2024), 1508-09 (September 2024). Indeed, the function report referenced by the ALJ states that she does not drive because "my vision retinopathy in both eyes." Tr. 309. Accordingly, the ALJ's finding is not fully supported by the record. However, the ALJ gave other clear and convincing reasons for giving less weight to Ms. W.'s symptom statements, such as inconsistency with the medical record and inconsistency with her travel activities (discussed below), so any error is harmless. *See Ford*, 950 F.3d at 1154; *Carmickle*, 533 F.3d at 1162-63. The ALJ further found that driving is inconsistent with Ms. W.'s allegations of severe leg pain and poor concentration and focus, which is not addressed by Ms. W.

The ALJ also found that Ms. W. engaged in travel inconsistent with her allegations. In June 2022, she told her mental health provider she had summer travel plans. Tr. 188. The record reflects she traveled to Lake Tahoe and Las Vegas, which involved air travel. Tr. 1132, 1138. She flew alone and managed an 8-hour layover in Seattle with no panic attacks. Tr. 1173. In August 2022, she stated she "was able to travel alone and I didn't have to take my anxiety medication." Tr. 1132. The ALJ noted she did not report any issues to her providers regarding walking or other difficulties during travel. Tr. 26. Therefore, the ALJ found that physically, Ms. W.'s ability to travel in combination with other findings in the record is not consistent with her allegations of problems standing, walking, and balancing. Mentally, the ALJ found that air travel requires the ability to interact with others and tolerate

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 17

crowds, which suggests generally intact social functioning. Tr. 26. Ms. W. contends the ALJ should have further developed the record regarding her travel activities but does not address the ALJ's finding that her travel is inconsistent with her alleged limitations. The ALJ's characterization of Ms. W.'s travel activities is supported by the record and this is a clear and convincing reason.

### 2. Medical Opinions

Ms. W. contends the ALJ failed to adequately evaluate the medical opinions of Jeanette Higgins, Psy.D., and Oscar del Valle, ARNP. According to Ms. W., if credited, the limitations assessed by these sources would result in a more restrictive residual functional capacity finding, which could lead to a disability finding.

An ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 404.1520c. Supportability and consistency are the most important factors in evaluating the persuasiveness of medical opinions and prior administrative findings, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. § 404.1520c(b)(2). The ALJ may, but is not required, to explain how other factors were considered. 20 C.F.R. § 404.1520c(b)(2); *see* 20 C.F.R. § 404.1520c(c)(1)-(5).

*Jeannette Higgins, Psy.D.*

In September 2023, Dr. Higgins, a consultative examiner, evaluated Ms. W. and diagnosed major depressive disorder, generalized anxiety disorder, and

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 18

depressive disorder due to a medical condition. Tr. 790. Dr. Higgins opined Ms. W. would not have difficulty performing simple and repetitive tasks; would not have difficulty performing detailed and complex tasks on a consistent basis; would not have difficulty accepting instructions from supervisors; would have difficulty interacting with coworkers and the public; would have difficulty performing work activities on a consistent basis without special or additional instructions; would have difficulty maintaining regular attendance and completing a normal workday or workweek; and would have difficulty dealing with usual stress encountered in the workplace. Tr. 790-91.

The ALJ found the opinion partially persuasive. The ALJ found the portion of the opinion assessing no limitations on the ability to perform simple and complex tasks and accept instructions from supervisors is generally consistent with the longitudinal record. The ALJ found the assessment of more severe limitations in several areas is inconsistent with the longitudinal record which reflects stable, controlled mental symptoms, normal mental status exam findings, and Ms. W.'s ability to travel by plane and drive a car. Tr. 29. As discussed above, the ALJ's findings regarding these issues are supported by substantial evidence. Therefore, the conclusion that the more severe limitations assessed by Dr. Higgins are inconsistent with the record is supported by substantial evidence.

The ALJ also rejected Dr. Higgins' limitations because she used the language "would have difficulty" to describe limitations and did not specifically rate the level

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 19

of functional limitation. While the ALJ is "responsible for translating and incorporating clinical findings into a succinct RFC," *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015), an ALJ may reject an opinion that does not show how symptoms translate into specific functional deficits, *Morgan,* 169 F.3d at 601. Ms. W. has not challenged this finding or addressed this reasoning.

Regarding supportability, the ALJ found the limitations that Ms. W. "would have difficulty" interacting with coworkers and the public, performing work on a consistent basis without additional instructions, maintaining regular attendance, and dealing with usual stress encountered in the workplace to be conclusory and unsupported. Ms. W. contends the ALJ's erred because Dr. Higgins referred to specific findings and observations she relied on in making these conclusions. Ms. W. is correct that for each limitation, Dr. Higgins stated the basis for her conclusion. The limitation that Ms. W. would have difficulty with coworkers and the public is "based on observed anxiety symptoms manifested as avoidance and emotional dysregulation under anticipatory, real, or perceived pressure;" the limitation of difficulty performing work activities on a consistent bases is "due to difficulty with some items of the mini mental status exam (i.e., memory, concentration, calculations, serial 7s)"; the limitation of difficulty maintaining regular work attendance is "based on depression and anxiety manifested as avoidance, apathy, and lack of energy and motivation;" and the limitation of difficulty dealing with the

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 20

usual stress of the workplace "based on anxiety manifested as avoidance and emotional dysregulation under real or perceived pressure and stress." Tr. 789-90.

In other words, Dr. Higgins explained the bases for the limitations she assessed yet the ALJ failed to evaluate or consider those in finding the opinion is unsupported. Accordingly, the ALJ's conclusion that the limitations assessed by Dr. Higgins are conclusory is not based on substantial evidence. The question is whether this error is harmless error. In an unpublished decision, the Ninth Circuit determined an ALJ appropriately found a provider's opinion unpersuasive because the opinion was inconsistent with other medical evidence in the record, even though the opinion was supported. *Allen v. Kijakazi*, 2023 WL 2728857, at *1 (9th Cir. Mar. 31, 2023) (unpublished). Similarly, the ALJ in this case appropriately found Dr. Higgins' opinion unpersuasive because the opinion was inconsistent with the longitudinal mental health record reflecting stable, controlled mental symptoms, normal mental status exam findings, and the ability to travel (discussed *supra*), even though Dr. Higgins referred to findings in support of the assessed limitations. Because the ALJ's consistency finding is supported by substantial evidence, the ALJ's consideration of Dr. Higgins' opinion overall is supported by substantial evidence, and any error is harmless.

*Oscar Del Valle, ARNP*

Mr. Del Valle examined Ms. W. and prepared a physical evaluation in September 2023. Tr. 793-98. Mr. Del Valle listed diagnoses of shortness of breath

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 21

secondary to COVID, multiple joint pain/discomfort (fibromyalgia), poor balance, chronic dizziness and weakness, and depression and anxiety. Tr. 797. His functional assessment included limitations of: stand or walk no more than three hours; able to sit eight hours with normal breaks; able to lift, carry and push/pull up to five pounds occasionally and frequently; never perform climbing, kneeling, crouching, crawling, and stooping; reaching, handling, fingering, and feeling are not limited; working at heights or heavy machinery should be avoided/limited. Tr. 797-98.

The ALJ found Mr. Del Valle's opinion is not persuasive. Tr. 28. First, the ALJ found the opinion was insufficiently supported because Mr. Del Valle had a limited understanding of the overall picture because he saw Ms. W. one time and reviewed few treatment notes. Tr. 28. Second, the ALJ found Mr. Del Valle's exam findings and assessed limitations are inconsistent with the overall record. Tr. 28.

Ms. W. contends the ALJ's finding "was predicated on believing that Plaintiff credibly fakes all of the aspects of her presentation during the examination in such a manner that ARNP del Valle was unaware of the deception." ECF No. 12 at 15. As noted above, the ALJ found the difference between Ms. W.'s presentation at Mr. Del Valle's exam and elsewhere in the record "suggests that she was exaggerating her symptoms" during the exam. Tr. 24. A finding of exaggeration is not synonymous with a finding that Ms. W. was intentionally deceptive or faking symptoms. The ALJ pointed to numerous treatment records from various sources across the period at issue which do not reflect the degree of symptoms observed by Mr. Del Valle. Tr. 28

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 22

(citing e.g., Tr. 843, 1038, 1068, etc., as discussed *supra*). Ms. W. again argues these records are not relevant. However, as discussed above, many of the records cited by the ALJ were from treating providers who conducted physical exams with minimal findings. And Ms. W. does not cite any other records indicating findings or complaints consistent with the level of poor balance, shortness of breath, dizziness, and reduced range of motion recorded by Mr. Del Valle.

In addition to finding Mr. Del Valle's opinion inconsistent with the record, the ALJ found the opinion of Dr. Paula L., M.D., to be more persuasive. Tr. 28. Dr. L. reviewed the record and found Ms. W. can occasionally lift or carry 25 pounds and can frequently lift or carry 20 pounds, can stand and walk six hours in an eight-hour workday, can sit six hours in an eight-hour workday, can occasionally balance, stoop, or crouch but never climb ladders, ropes, or scaffolds, and should not work at heights or around machinery and should avoid moderate exposure to vibration. Tr. 86-87. The ALJ observed Dr. L. cited evidence to substantiate her opinion and reflects the most comprehensive view of the longitudinal evidence. Tr. 27. Accordingly, the ALJ's finding is supported by substantial evidence.

### 3. Lay Witness Statement

Ms. W. contends the ALJ applied the wrong legal standard in considering the lay witness statements from her husband, Tr. 279-80, 498, her mother, Tr. 494, a former co-worker, Tr. 496, and her sister-in-law, Tr. 497. The ALJ acknowledged the statements and said they were considered but noted that he was not required to

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 23

articulate how they were considered. Tr. 30. Indeed, 20 C.F.R. § 404.1520c(d) provides the Commissioner is "not required to articulate how we considered evidence from nonmedical sources using the requirements [for considering medical sources]." However, the Ninth Circuit has not yet determined whether the revised regulations no longer require an ALJ to articulate any reason for rejecting lay testimony. *See Williams v. O'Malley*, 2024 WL 3519774, at *3 n.4 (9th Cir. July 24, 2024). Whether an ALJ must still provide germane reasons to reject a nonmedical statement remains an open question. *See Donnelly, v. Commissioner of Social Security*, 2025 WL 1473954, at *14 (E.D. Cal. May 22, 2025). As such, the ALJ did not apply the wrong legal standard. Even assuming the ALJ's lack of explanation was error, any error was harmless. *See Ford*, 950 F.3d at 1154. The lay witness statements essentially refer to the same symptom allegations made by Ms. W.  As discussed above, the ALJ's findings about Ms. W.'s symptom statements are supported by substantial evidence. Nothing in the lay witness statements would change ALJ's conclusions based upon the evidence of record. *See Molina*, 674 F.3d at 1115. The ALJ's finding is not based on error.

CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. The Court affirms the Commissioner's decision.

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 24

Accordingly, **IT IS ORDERED:**

1.  Plaintiff's Brief, **ECF No. 12**, is **DENIED**.

2.  Defendant's Brief, **ECF No. 15**, is **GRANTED**.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for the Defendant and the file shall be **CLOSED**.

**DATED** April 22, 2026.

REBECCA L. PENNELL
United States District Judge

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 25